IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daniel C.<br><br>　　　　Plaintiff,<br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 18-cv-04768<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel C.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Daniel moves the Court to reverse and remand the decision, and the Commissioner asks for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.　BACKGROUND**

Daniel was born on January 8, 1970, R. 63. He previously worked as a data center engineer, communications journeyman, and an electrician. R. 22, 36. In those jobs, Daniel was required to move around and climb ladders. R. 37. In August 2014, Daniel suffered a stroke and stopped working thereafter. R. 64.

In August 2014, Daniel filed an initial claim for disability alleging that he became disabled and unable to work on August 18, 2014 due the following conditions: Wallenberg

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or alternatively, by first name.

Syndrome/stroke, severe balance issues, constant tingling on the left side of the body, loss of sensation on the left side of the body, inability to feel temperature on the left side of the body, loss of tactile feeling on left hand and left foot, inability to sit or stand, weakened ability to swallow, hypertension, and fatigue. *See, e.g.*, R. 63-64. Daniel's application was denied initially, upon reconsideration, and in a September 22, 2017 decision following a hearing held by the ALJ. R. 13-24. Daniel testified, as did a vocational expert ("VE"). R. 32-62.

At the outset, the ALJ determined that the disability onset date is August 18, 2014. Following the Social Security Administration's five-step analysis for evaluating disability, the ALJ found that Daniel had not engaged in substantial gainful activity since his alleged onset date (step one). The ALJ next determined that Daniel suffered from the following severe impairments: cerebral vascular accident ("CVA"), Wallenberg syndrome, and sleep apnea. R. 15. The ALJ found that none of these impairments met or medically equaled the severity of a listed impairment (step three).

Next, the ALJ concluded that Daniel retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with several additional limitations. R. 16. The ALJ's limitations were:

> He is limited to standing for four hours per 8-hour workday. He can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and occasionally balance, stoop, kneel, crouch, or crawl. He may have no more than occasional concentrated exposure to hazards such as dangerous, moving machinery or unprotected heights. He should not be exposed to hot objects that would burn to the touch as part of the job. He should not be required to work with his hands when on steps or ladders. He should not be required to feel objects with his left non-dominant upper extremity.

R. 16. Based on the ALJ's RFC determination, the ALJ found that Daniel could not perform his past relevant work as a data center engineer/electrician foreman (step four). R. 22. Then, the ALJ

determined that Daniel was able to perform other work that existed in significant numbers in the national economy such as an escort vehicle driver, food order clerk, or a call out operator (step five). R. 23. Accordingly, the ALJ found that Daniel was not disabled. R. 24. The Appeals Counsel declined review on May 9, 2018, leaving the ALJ's decision as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). R. 1-4; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry that asks: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *see also Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial

evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 2019 WL 644219, at *5 (7th Cir. Feb. 15, 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Daniel challenges the ALJ's decision on several grounds including that: (1) the ALJ did not properly assess medical opinion evidence and (2) the ALJ accepted the VE's testimony without meaningful challenge. As explained below, the Court concludes that the ALJ erred in evaluating the medical opinion evidence and the VE's testimony. Because the ALJ's decision is overturned on these grounds, the Court need not reach Daniel's other arguments for remand.

### 1. Treating Physician Opinion

The Court first addresses Daniel's argument that the ALJ improperly assessed the medical opinion of a treating physician, Dr. Rubinstein. Specifically, Daniel contends that the ALJ failed to provide a "reasonable explanation" to discount the treating physician's medical opinion that he was unable to return to work. Doc. [16] at 12.

The "opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence. And the ALJ is not required to give controlling weight to the ultimate

4

conclusion of disability—a finding specifically reserved for the Commissioner." *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) (internal citations omitted); 20 C.F.R. § 404.1527(d)(2). An ALJ should explain its reasons for affording a medical opinion less weight. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight . . . we consider all of the following factors in deciding the weight we give to any medical opinion."). Section 404.1527(c)'s factors to be considered in affording a medical opinion less weight include the: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors such as a medical source's understanding of disability programs. *Id.* Courts have repeatedly stated that an ALJ must minimally articulate the reasons for crediting or rejecting evidence of disability. *See, e.g.*, *Clifford*, 227 F.3d at 870. Related, an ALJ must build an accurate and logical bridge between the evidence and her conclusion about the weight to give a medical opinion. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

Here, the ALJ stated that she gave "significant" weight to Dr. Rubinstein's opinion but "[l]ess weight . . . to the [same physician's] medical source statement." R. 22. Daniel does not argue for remand based on the ALJ's decision to give "significant" rather than "controlling" weight. *See* 20 C.F.R. § 404.1527(c)(2). Rather, Daniel challenges the ALJ's reason for discounting Dr. Rubinstein's opinion by stating that "she could not know whether the opinion would be the same for a period of time after the physician issued it." Doc. [16] at 12. In other words, Daniel argues that it was improper for the ALJ to discount a medical opinion on the basis that the opinion was limited in temporal scope without discussing other rationale for affording it less weight such as the treatment relationship or the quality of that relationship. The medical source statement observed "[p]rogressive recovery with residual functional impairment unable to

5

return to work at this time." R. 790. The definition of disability under the Social Security Act focuses on the inability to work, and therefore this treating physician's opinion on whether Daniel was able to work is one that goes to the ultimate question of disability. So, the ALJ was not *required* to give controlling weight to Daniel's ability to work. *See Denton*, 596 F.3d at 424. But, the ALJ nevertheless needed to show her reasoning for affording a medical opinion less weight. The ALJ's reasoning seems to be that Dr. Rubinstein's January 2015 opinion – five months following the alleged onset date – was due less weight because it was limited to "at this time" and so "it was not indicative of the claimant's functioning 12 months after his [Cerebral Vascular Accident] . . . ." R. 22.

Unless an ALJ gives a treating source's medical opinion controlling weight, the ALJ should consider § 404.1527(c)'s factors in deciding the weight we give to any medical opinion. 20 C.F.R. § 404.1527(c). Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion. *See Clifford*, 227 F.3d at 872 (reversing ALJ's decision because, in part, because the ALJ's decision was conclusory and failed to articulate some legitimate reason for the decision); *see also Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016) ("the ALJ did not explicitly apply the [§ 404.1527(c)] checklist. In this Court's view, that failure alone is a ground for a remand."). The ALJ here did not expound on § 404.1527(c)'s factors in affording Dr. Rubinstein's medical source statement less weight. Although the timeframe of a physician's opinion is a relevant inquiry, the ALJ did not show her reasoning for discounting Dr. Rubinstein's medical source statement further by, for example, discussing 20 C.F.R. § 404.1527(c)'s factors. On remand, the ALJ should explicitly consider the following factors as it applies to any treating physician's medical opinion to which the ALJ gives less than controlling

6

weight: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors such as a medical source's understanding of disability programs. *Id.* As a result, the ALJ's decision lacks adequate analysis to the extent that this Court is unable to understand whether decision to afford less weight to the treating physician's medical source statement was appropriate. *See* R. 22 and 790.

  Daniel next argues that the ALJ mischaracterized Dr. Rubinstein's medical opinions. The Court is similarly concerned that the ALJ's evaluation of Dr. Rubinstein's September 2015 and July 2016 medical records misinterprets aspects of Dr. Rubinstein's medical opinions. *See* R. 632 and 644. The ALJ's decision characterized both medical opinions to project a generally positive outlook. R. 19-20. The September 2015 opinion relates to a neurology follow-up appointment that took place approximately 11 months following Daniel's stroke. R. 632. Regarding the September 2015 medical opinion, the ALJ's decision does not account for Dr. Rubinstein's note that "[l]eft arm and leg paresthesia continue with [medication]" nor the note that Daniel is "[u]nable to work due to instability on steps or a short ladder . . . ." R. 632. Further, it is not entirely clear to this reviewing Court whether the ALJ's decision considered Dr. Rubinstein's observation of "*diminished* left hand sensation," R. 632 (emphasis added), in noting that "Dr. Rubinstein continued to assess . . . residual impairments in left hand sensation . . . ." R. 20. Regarding the July 2016 medial opinion, occurring nearly two years following the stroke, the ALJ's decision suggests that Daniel – not the physician – reported an inability to work. R. 20 ("The claimant reported that his balance and manipulations remained 'off' and said that he was unable to work . . . ."). But the July 2016 medical opinion appears to show the physician – not the claimant – opined on an inability to work. R. 641 ("Balance and manipulations remain off and unable to work . . . ."). Although an ALJ is not required to give controlling weight to the ultimate

7

conclusion of disability, a claimant's self-serving statement about disability differs in weight as compared to a treating physician's opinion. Additionally, the ALJ's summary of the July 2016 medical opinion states that Daniel had "no coordination deficits and balance was intact." R. 20. Although this was noted in the July 2016 medical opinion, the same opinion also notes "[b]alance and manipulations remain off and unable to work due to *instability*." R. 641 (emphasis added). The ALJ does not address this apparent contradiction. Thus, the ALJ's decision is not substantially based on the record as it inaccurately summarizes the treating physician's most recent medical opinions.

Accordingly, even under the deferential review afforded to the ALJ's decision, this Court cannot hold that the ALJ's decision was based on substantial evidence in the record: the ALJ's decision does not minimally articulate the reasons for discounting the treating physician's medical source statement nor fully accounts for the treating physician's most recent medical opinions. The ALJ's decision is reversed and the case is remanded so that the ALJ can reevaluate Dr. Rubinstein's medical opinions in accordance with this opinion and order.

      **2.     Vocational Expert Testimony**

Daniel argues that the ALJ erroneously accepted the VE's testimony regarding the available jobs that Daniel could perform without question. As a backdrop, the VE, whose function in a social security disability hearing is to determine which jobs an applicant can do and how many such jobs exist, opined based on the ALJ's hypothetical limitations that Daniel could perform work as an Escort Vehicle Driver (DOT 919.663-022), a Food Order Clerk (DOT 209.567-014), and a Call Out Operator (DOT 237.367-014). R. 59. The VE further testified that there were 140,000 Escort Vehicle Driver jobs in the United States, 30,000 Food Order Clerk jobs in the United States, and 14,000 Call Out Operator jobs in the United States. R. 59. The ALJ fully credited the VE's testimony and explained that her decision was "[b]ased on the testimony of the vocational expert."

R. 23. Explaining further, the ALJ said that "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles[ and] . . . his over 20 years of professional experience." R. 23. The ALJ's decision appears to rely fully on her adoption of the VE's testimony even though the VE's testimony did not explain the source of the estimated number of jobs that Daniel could perform. This is problematic because the Seventh Circuit has explained that "the DOT does not contain information on which to base an estimate of the number of available jobs of a particular kind." *Voight v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015) (collecting cases). Here, the ALJ relies on the same boilerplate statement that was found to leave an evidentiary gap in *Voight*. This Court follows *Voight*'s explanation as to how this evidentiary gap is problematic:

> we have no idea what [is] the source or accuracy of the number of jobs that vocational experts (including the one in this case, whose estimates the [ALJ] accepted without comment) claim the plaintiff could perform that exist in the plaintiff's area, the region, or the nation. There is no official source of number of jobs for each job classification in the *Dictionary of Occupational Titles*, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general, and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy. And many of them estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category, even though there is no basis for assuming that there is the same number of jobs in each narrow category.

*Id.* (internal quotations and citations omitted). Here, there is no indication that the estimate of the number of jobs that Daniel could fill is any more accurate than it was in *Voight*. *See id.* (citing *Browning*, 766 F.3d at 709). Neither the VE's testimony nor the ALJ's decision that adopted it provided any indication as to how the numbers of available jobs were calculated beyond the VE's statement that it is based on 29 years' worth of experience. R. 59. Accordingly, this Court cannot

9

hold that the ALJ's finding that other work existed in significant numbers in the national economy (step 5) is supported by substantial evidence in the record.

The Seventh Circuit has held that a claimant's failure to challenge the basis for a vocational expert's testimony at the hearing forfeits any objection thereto. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), *on reh'g*, 368 F.3d 691 (7th Cir. 2004). Although Daniel's lawyer should have objected to the basis of the VE's testimony at the hearing, this Court holds that the ALJ still cannot parrot the VE's conclusory testimony without question or comment where the basis for the data and reasoning underlying the VE's opinion is unsupported and unclear. *See Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) ("The ALJ based his finding that Overman could perform other work entirely on the VE's erroneous testimony. . . . Because the ALJ's ruling was premised entirely on testimony that conflicted with the DOT and otherwise was vague and confusing, this case must be remanded for further proceedings.") (internal citations and quotations omitted).

### III. CONCLUSION

For the reasons and to the extent stated herein, Daniel C.'s Motion for Summary Judgment [15] and [16] are granted. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff Daniel C. and against Defendant Commissioner of Social Security.

**SO ORDERED.**

**Dated: May 9, 2019**

**Sunil R. Harjani**
**United States Magistrate Judge**